IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

JONATHAN D. BALLOU,

    Plaintiff,

v.                                                         Civil Action No.: 3:26-cv-101

AMERICAN RED CROSS OF VIRGINIA,
    **SERVE:**     **James Hatcher, III**
                       **Regional CEO**
                       **Regional Headquarters**
                       **2825 Emerywood Pkwy**
                       **Richmond, VA 23294**

    Defendant.

                                                                                          **JURY TRIAL**
                                                                                          **DEMANDED**

## COMPLAINT

The plaintiff Jonathan D. Ballou ("Ballou"), by counsel, submits this Complaint against the defendant American Red Cross of Virginia ("Red Cross") and states as follows:

NATURE OF ACTION

This is a civil action seeking financial, compensatory and punitive damages for sexual orientation discrimination, harassment and retaliatory discharge for complaining of such discrimination and harassment, in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. § 2000e-2 and 3; and the Virginia Human Rights Act, 2.2-3905.

PARTIES

1. Ballou is a gay male residing in Chesterfield, Virginia.

2. The respondent Red Cross is a humanitarian organization that engages in the collection of blood from volunteer donors, and provides disaster relief, services to members of the military

serving abroad, and training in lifesaving and first aid. Its Regional Headquarters in Virginia are located at 2825 Emerywood Pkwy, Richmond, VA 23294, in the County of Henrico.

3. Ballou was an "employee" within the meaning of 42 U.S.C. § 2000e(f) and Va. Code § 2.2-3905.

4. The Red Cross was an "employer" within the meaning of 42 U.S.C. § 2000e(b) and Va. Code § 2.2-3905.

## JURISDICTION and VENUE

5. Jurisdiction over plaintiff's claims is based on 28 U.S.C. § 1331 (federal question jurisdiction) and 28 U.S.C. § 1343(3) (violation of civil rights). Supplemental pendent jurisdiction over plaintiff's state law claims is based on 28 U.S.C. § 1367 (supplemental jurisdiction). Venue is proper in this District, as the location of the parties and the situs of the events set forth herein.

## PROCEDURAL STATUS

6. On or about January 17, 2025, Ballou filed a timely administrative Charge of Discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC"). (Charge No. 438-2025-00073)

7. On November 14, 2025, the EEOC issued Ballou a Notice of Right to Sue within 90 Days.

8. This action is timely filed and all procedural prerequisites to suit have been met.

## ALLEGATIONS

9. Ballou began employment with the Red Cross on June 15, 2023 as a blood technician. At the time of his termination he earned wages of $18.35 per hour for full-time work. (He later worked part-time to avoid the harassment due to his sexual orientation described below.)

Ballou's direct supervisor was Raymond Hanna. His higher level supervisors were Donnie Ragland and Gregory Huey.

10. Ballou performed his job duties satisfactorily and in accordance with the reasonable expectations of the Red Cross.

11. Within a month of commencing employment, Hanna began harassing Ballou over his sexual orientation, including mocking the way he walked and talked, the inflection of his voice, and the fact that he liked the color pink. Ballou learned that Hanna recorded surreptitious videos of Ballou and shared them with their co-workers to embarrass and humiliate him. Hanna once locked Ballou in a walk-in refrigerator and prevented him from getting out. On other occasions, Hanna called Ballou a "fagot." Hanna also generally criticized Ballou's work product and minimized the contributions that Ballou made to the Red Cross.

12. At some point, Hanna's abusive hostility reached a point that Ballou was compelled to report Hanna's behavior to his manager Ragland. Specifically, Ballou told Ragland that Hanna's behavior made him uncomfortable and that it was motivated by Ballou's sexual orientation.

13. Thereafter, on August 23, 2024, Ballou prepared a letter complaining of Hanna's harassment to the Red Cross' Human Resources Department. In the letter, Ballou expressly stated that Hanna "has made numerous comments mocking my sexual orientation. He frequently makes fun of the way I speak and talk, in a manner that is clearly meant to belittle me based on my sexual identity."

14. An HR employee named Caveda responded to Ballou's complaint, telling him that he would discuss the accusations of hostility with both Ballou and Hanna, but never did. Ballou heard nothing from HR or Red Cross management after submitting his complaint.

15. A few of Ballou's co-workers who witnessed Hanna's abusive treatment of Ballou wrote statements informing HR of the repeated hostility.

16. Eventually, Ballou told a woman named Julie (last name unknown) that he intended to submit a charge of discrimination with the EEOC.

17. On November 14, 2024, the Red Cross terminated Ballou's employment, purportedly because he had engaged in timecard fraud with respect to the times that he entered and exited the building. This accusation was false and pretextual since Ballou's door entry card frequently did not permit his door entry or record the entry time. Whenever that occurred, Ballou entered his entry time manually on the Red Cross' Workday computer system, as he was instructed to do.

18. Ballou frequently spoke with his managers about his defective door entry card and requested a functioning replacement, but the problem was never corrected prior to his dismissal. In fact, Huey had warned Ballou about the issue just the week prior to his dismissal, and Ballou informed him of the situation regarding his defective door entry card.

19. The excuse of poor performance was false and pretextual, since Red Cross management was on notice that Ballou's door entry card did not activate door or time clock, yet fired him for purported time theft. Ballou never engaged in any such timecard fraud and was paid only for the hours that he actually worked.

20. Upon information and belief, Ballou's employment was terminated because he had opposed and reported to the Red Cross management the harassment and discrimination he faced from Hanna due to his sexual orientation.

21. Ballou was subjected to a hostile work environment due to discrimination against his sex orientation, in violation of his rights under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2; and the Virginia Human Rights Act, 2.2-3905.

22. Ballou was terminated from employment in retaliation of his complaints of harassment and discrimination, in violation of his rights under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-3; and the Virginia Human Rights Act, 2.2-3905.

23. Ballou has suffered, and will continue to suffer, lost back and front salary and benefits, emotional harm, mental anguish, injury to his mental health, costs for mental health treatment, injury to his career, damage to his work record, and inconvenience, all as a result of the discrimination and harassment and the hostile work environment described herein, plus the retaliatory treatment and termination from employment described herein.

<u>COUNT I</u>
SEXUAL ORIENTATION DISCRIMINATION AND HARASSMENT
TITLE VII OF THE CIVIL RIGHTS ACT OF 1964

24. Ballou suffered pervasive and severe harassment from his supervisor Raymond Hanna on account of his sexual orientation, as described herein. As a result, the Red Cross violated Ballou's rights under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2.

25. Ballou's injuries under this Count entitle him to reinstatement to his former position, and an award for (a) loss of past and future earnings, including fringe benefits; (b) compensation for his humiliation, pain and suffering, emotional distress, and loss of personal and professional reputation; (c) compensation for damage to his career; (d) attorney's fees under 42 U.S.C. § 1988; and (e) costs of suit.

<u>COUNT II</u>
SEXUAL ORIENTATION DISCRIMINATION AND HARASSMENT
VIRGINIA HUMAN RIGHTS ACT

26. Ballou suffered pervasive and severe harassment from his direct supervisor Raymond Hanna on account of his sexual orientation, as described herein. As a result, the Red Cross violated Ballou's rights under the Virginia Human Rights Act, 2.2-3950.

27. Ballou's injuries under this Count entitle him to reinstatement to his former position, and an award for (a) loss of past and future earnings, including fringe benefits; (b) compensation for his humiliation, pain and suffering, emotional distress, physical injuries, and loss of personal and professional reputation; (c) compensation for damage to his career; (d) attorney's fees under Va. Code § 2.2-3908(B); and (e) costs of suit.

## COUNT III
## RETALIATORY DISCHARGE
## TITLE VII OF THE CIVIL RIGHTS ACT OF 1964

28. Ballou was dismissed from his employment in retaliation for complaining of the pervasive and severe harassment he suffered from his supervisor Raymond Hanna on account of his sexual orientation, as described herein. As a result, the Red Cross violated Ballou's rights under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-3.

29. Ballou's injuries under this Count entitle him to reinstatement to his former position, and an award for (a) loss of past and future earnings, including fringe benefits; (b) compensation for his humiliation, pain and suffering, emotional distress, and loss of personal and professional reputation; (c) compensation for damage to his career; (d) attorney's fees under 42 U.S.C. § 1988; and (e) costs of suit.

## COUNT IV
## RETALIATORY DISCHARGE
## VIRGINIA HUMAN RIGHTS ACT

30. Ballou was dismissed from his employment as a direct result of complaining of the pervasive and severe harassment he suffered from his direct supervisor Raymond Hanna on account of his sexual orientation, as described herein. As a result, the Red Cross violated Ballou's rights under the Virginia Human Rights Act, 2.2-390.

31. Ballou's injuries under this Count entitle him to reinstatement to his former position, and an award for (a) loss of past and future earnings, including fringe benefits; (b) compensation for his humiliation, pain and suffering, emotional distress, and loss of personal and professional reputation; (c) compensation for damage to his career; (d) attorney's fees under Va. Code § 2.2-3908(B); and (e) costs of suit.

WHEREFORE, the plaintiff Jonathan D. Ballou demands judgment against the defendant American Red Cross of Virginia, reinstating him to his former position, and awarding him compensatory and punitive damages in the amount of ONE MILLION DOLLARS ($1,000,000.00), plus attorney's fees and costs of suit, and further relief as this Court may deem just and proper.

**A jury trial is demanded pursuant to Fed. R. Civ. P. 38.**

Respectfully submitted,

JONATHAN D. BALLOU

By: /s/ Scott G. Crowley
Virginia Bar No. 31216
Attorney for Jonathan D. Ballou
Crowley & Crowley, P.C.
4870 Sadler Road, Suite 300
Glen Allen, VA  23060
Tel.:  (804) 205-5010
Fax: (804) 800-4243
Email: scrowley@crowleyandcrowley.com